No. 23-5232

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

Brian Adams, et al.,
*Plaintiffs – Appellees,*
*v.*
3M Company,
*Defendant – Appellant*

Mine Safety Appliances, et al.
*Defendants*

On Appeal from the United States District Court for the Eastern District of Kentucky
Case Nos. 7:21-cv-00082; 7:21-cv-00086

_____

### BRIEF OF APPELLANT 3M COMPANY

_____

Evan M. Tager
Mayer Brown LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
etager@mayerbrown.com

Michael A. Scodro
Christopher Ferro
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
mscodro@mayerbrown.com
cferro@mayerbrown.com

Byron N. Miller
Thompson Miller & Simpson PLC
734 West Main Street, Suite 400
Louisville, KY 40202
Telephone: (502) 585-9900
bmiller@tmslawplc.com

Bryant J. Spann
Thomas Combs & Spann
300 Summers Street, Suite 1380
Charleston, WV 25301
Telephone: (304) 414-1800
bspann@tcspllc.com

*Counsel for Appellant 3M Company*

Margaret Oertling Cupples
James Stephen Fritz, Jr.
Bradley Arant Boult Cummings LLP
One Jackson Place
188 E Capitol Street, Suite 1000
Jackson, MS 39201
Telephone: (601) 948-8000
mcupples@bradley.com
sfritz@bradley.com

Scott Burnett Smith
Bradley Arant Boult Cummings LLP
200 Clifton Avenue West, Suite 900
Huntsville, AL 35801
Telephone: (256) 517-5100
ssmith@bradley.com

Timothy Rodriguez
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone: (615) 244-2582
trodriguez@bradley.com

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 23-5232                         Case Name: Adams, et al. v. 3M Company

Name of counsel:  Evan M.Tager

Pursuant to 6th Cir. R. 26.1, 3M Company
                                                      *Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
    identity of the parent corporation or affiliate and the relationship between it and the named
    party:

    No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
    in the outcome?  If yes, list the identity of such corporation and the nature of the financial
    interest:

    No.

### CERTIFICATE OF SERVICE

I certify that on _____ March 31, 2023 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

                         s/ Evan M. Tager
                         Mayer Brown LLP

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

**6th Cir. R. 26.1**
**DISCLOSURE OF CORPORATE AFFILIATIONS**
**AND FINANCIAL INTEREST**

(a)   **Parties Required to Make Disclosure**.   With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.   A negative report is required except in the case of individual criminal defendants.

(b)   **Financial Interest to Be Disclosed**,

(1)   Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.   A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2)   Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c)   **Form and Time of Disclosure**.   The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# Table of Contents

**Page**

Disclosure of Corporate Affiliations and Financial Interest.......................................i

Table of Authorities ..............................................................................................vi

Statement in Support of Oral Argument ................................................................ xii

Statement of Jurisdiction.........................................................................................1

Statement of Issues..................................................................................................1

Statement of the Case..............................................................................................2

I.    Factual Background ........................................................................................2

II.   Procedural Background ..................................................................................5

Summary of the Argument.......................................................................................7

Standard of Review................................................................................................9

Argument................................................................................................................10

I.    3M properly removed these cases under CAFA. ..........................................10

      A.    CAFA should be liberally construed to favor federal
            jurisdiction.........................................................................................10

      B.    Plaintiffs proposed these cases to be tried jointly.............................11

            1.    A joint trial is proposed when 100 or more plaintiffs join
                  in a single complaint. ..............................................................12

            2.    Plaintiffs here proposed a joint trial, and the district court
                  erred in concluding otherwise..................................................15

      C.    Plaintiffs proposed a joint trial on the ground that their claims
            involve common questions of law or fact. ..........................................19

1.    Plaintiffs propose that their claims involve common questions when they purport to meet the permissive joinder standard. .......................................................19

2.    Plaintiffs proposed that their claims involve common questions, and the district court committed numerous errors in concluding otherwise. ...............................21

II.    3M properly removed these cases on non-CAFA grounds. ..........................26

A.    This Court can and should consider the non-CAFA bases for removal. ...................................................................26

B.    3M properly removed these cases based on federal-question jurisdiction. .............................................................29

1.    Plaintiffs' fraud claim necessarily raises a federal question. ...............................................................30

2.    The federal issue is actually disputed. ......................................31

3.    The federal issue is substantial. .................................................32

a.    Plaintiffs' allegations implicate agency action. ..............33

b.    The federal question is important. ...................................35

c.    The federal issue is not incidental, and its resolution will inform similar cases. ............................37

4.    Resolving this important federal issue in federal court would not upset the federal-state balance. ................................38

C.    Plaintiffs fraudulently joined the Supplier Defendants. .....................40

1.    The local stores were fraudulently joined because Kentucky law immunizes them. ...................................................42

a.    Plaintiffs' allegations that the Manufacturer Defendants concealed product defects contradict Plaintiffs' allegations that the two local stores should have known about defects. ...................................43

b.     Plaintiffs' citations to technical publications do not support colorable claims that the two local stores should have known about defects.................................45

2.     The district court erred by not considering the pattern and practice of joining the local stores in respirator litigation. .......48

Conclusion ........................................................................................50

Certificate of Compliance ...........................................................51

Certificate of Service ...................................................................51

Addendum ........................................................................................52

# Table of Authorities

**Page(s)**

## Cases

*In re Abbott Labs.*,
  698 F.3d 568 (7th Cir. 2012) ................................................................12, 13, 14

*In re Abilify (Aripiprazole) Prods. Liab. Litig.*,
  No. 3:16md2734, 2018 WL 6258903 (N.D. Fla. Nov. 8, 2018) ........................49

*Air Wisc. Airlines Corp. v. Hoeper*,
  571 U.S. 237 (2014)..............................................................................19, 20, 25

*Alexander v. Elec. Data Sys. Corp.*,
  13 F.3d 940 (6th Cir. 1994) ..............................................................................45

*Atwell v. Boston Sci.*,
  740 F.3d 1160 (8th Cir. 2013) ...........................................................................12

*Badon v. RJR Nabisco, Inc.*,
  224 F.3d 382 (5th Cir. 2000) .............................................................................41

*Barnes v. Owens-Corning Fiberglas Corp.*,
  201 F.3d 815 (6th Cir. 2000) .............................................................................23

*Block v. Toyota Motor*,
  665 F.3d 944 (8th Cir. 2011) .............................................................................43

*BP v. Mayor & City Council of Baltimore*,
  141 S. Ct. 1532 (2021)........................................................................................28

*Brill v. Countrywide Home Loans, Inc.*,
  427 F.3d 446 (7th Cir. 2005) .......................................................................27, 28

*Bullard v. Burlington N. Santa Fe Ry.*,
  535 F.3d 759 (7th Cir. 2008) .......................................................................12, 25

*Burrell v. Bayer Corp.*,
  918 F.3d 372 (4th Cir. 2018) .............................................................................33

*Casias v. Wal-Mart Stores, Inc.*,
  695 F.3d 428 (6th Cir. 2012) .......................................................18, 41, 44, 48

*Coffey v. Freeport McMoran Copper & Gold*,
  581 F.3d 1240 (10th Cir. 2009) ........................................................27

*Corber v. Zanodyne Pharm.*,
  771 F.3d 1218 (9th Cir. 2014) (en banc) ...........................................12

*Estate of Cornell v. Bayview Loan Serv., LLC*,
  908 F.3d 1008 (6th Cir. 2018) ....................................................32, 34

*Dart Cherokee Basin Op. Co., LLC v. Owens*,
  574 U.S. 81 (2014)...........................................................10, 16, 26

*Davenport v. Lockwood, Andrews & Newnam, Inc.*,
  854 F.3d 905 (6th Cir. 2017) ..............................................................9

*Day v. James Marine, Inc.*,
  518 F.3d 411 (6th Cir. 2008) ............................................................22

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine)
  Prods. Liab. Litig.*,
  220 F. Supp. 2d 414 (E.D. Pa. 2002).................................................49

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
  547 U.S. 677 (2006)....................................................................38, 39

*Ferguson v. Neighborhood Hous. Servs.*,
  780 F.2d 549 (6th Cir. 1986) ...............................................24, 33, 36

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)...........................................................................46

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005).................................................................*passim*

*Grasier v. Visionworks of Am., Inc.*,
  819 F.3d 277 (6th Cir. 2016) ............................................................14

*Gunn v. Minton*,
  568 U.S. 251 (2013).....................................................30, 31, 32, 38

*Hampton v. R.J. Corman R.R. Switching Co.*,
  683 F.3d 708 (6th Cir. 2012) ............................................................18

*Miss. ex rel. Hood v. AU Optronics*,
 571 U.S. 161 (2014)................................................................20, 24, 25

*Hudak v. Elmcroft of Sagamore Hills*,
 58 F.4th 845 (6th Cir. 2023) ...............................................29

*Hughes v. Vanderbilt Univ.*,
 215 F.3d 543 (6th Cir. 2000) ...............................................23

*Jauregui v. Roadrunner Transp. Servs., Inc.*,
 28 F.4th 989 (9th Cir. 2022) .........................................10, 26

*Johnson v. Wal-Mart Stores E., LP*,
 169 F. Supp. 3d 700, 703 (E.D. Ky. 2016)........................46

*Kent v. Bank of Am., N.A.*,
 No. 11-2315, 2012 WL 3582759 (D. Minn. May 31, 2012), *aff'd*,
 518 F. App'x 514 (8th Cir. 2013) ........................................49

*Koral v. Boeing Co.*,
 628 F.3d 945 (7th Cir. 2011) ...............................................13

*Lester v. Exxon Mobil*,
 879 F.3d 582 (5th Cir. 2018) ...............................................12

*Lu Junhong v. Boeing*,
 792 F.3d 805 (7th Cir. 2015) ...............................................27

*Merrell Dow Pharma. Inc. v. Thompson*,
 478 U.S. 804 (1986)..............................................................30

*Nessel ex rel. Mich. v. AmeriGas Partners, L.P.*,
 954 F.3d 831 (6th Cir. 2020) .........................................10, 21

*Mikulski v. Centerior Energy Corp.*,
 501 F.3d 555 (6th Cir. 2007) (en banc) ...........................31, 32, 38, 39

*Nerad v. AstraZeneca Pharm., Inc.*,
 203 F. App'x 911 (10th Cir. 2006)..................................18, 41

*Nevada v. Bank of Am.*,
 672 F.3d 661 (9th Cir. 2012) ...............................................27

*Parson v. Johnson & Johnson*,
   749 F.3d 879 (10th Cir. 2014) ....................................................14, 18

*Ramirez v. Vintage Pharms.*,
   852 F.3d 324 (3d Cir. 2017) ........................................................*passim*

*Riley v. Ohio Cas. Ins. Co.*,
   855 F. Supp. 2d 662 (W.D. Ky. 2012)..................................................21

*Robert D. Mabe, Inc. v. OptumRX*,
   43 F.4th 307 (3d Cir. 2022) ........................................................11, 20

*Roberts v. Mars Petcare US, Inc.*,
   874 F.3d 953 (6th Cir. 2017) .............................................................10

*Rogers v. Wal-Mart Stores, Inc.*,
   230 F.3d 868 (6th Cir. 2000) .............................................................17

*Scimone v. Carnival Corp.*,
   720 F.3d 876 (11th Cir. 2013) ....................................................*passim*

*Stewart v. Entergy Corp.*,
   35 F.4th 930 (5th Cir. 2022) .............................................................27

*Taylor v. Southwire Tools & Equip.*,
   130 F. Supp. 3d 1017 (E.D. Ky. 2015) (Thapar, J.) ..........................46

*UMWA v. Gibbs*,
   383 U.S. 715 (1966)..................................................................19, 25

*Vander Boegh v. EnergySolutions, Inc.*,
   772 F.3d 1056 (6th Cir. 2014) ....................................................19, 25

*Visendi v. Bank of America, N.A.*,
   733 F.3d 863 (9th Cir. 2013) .......................................17, 22, 23, 24

*Williams v. 3M Co.*,
   No. 7:18-cv-63-KKC, 2018 WL 3084710 (E.D. Ky. June 22, 2018) ...............50

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
   516 U.S. 199 (1996)..........................................................................28

*In re Zoloft (Sertraline Hydrocholoride) Prods. Liab. Litig.*,
  257 F. Supp. 3d 717 (E.D. Pa. 2017) .................................................41

**Statutes**

28 U.S.C. § 1292 .................................................................27, 28, 29

28 U.S.C. § 1331 ..........................................................................1, 30

28 U.S.C. § 1332 .....................................................................*passim*

28 U.S.C. § 1442 ........................................................................28, 29

28 U.S.C. § 1443 ................................................................................28

28 U.S.C. § 1446 ................................................................................14

28 U.S.C. § 1447 ........................................................................28, 29

28 U.S.C. § 1453 .....................................................................*passim*

30 U.S.C. § 842 ..................................................................................35

Federal Coal Mine and Safety Act of 1969, Pub. L. 91-173, § 2(g), 83
  Stat. 742, 743 (1969) ...............................................................35, 36

Ky. Rev. Stat. § 411.340 ..............................................................42, 45

**Other Authorities**

30 C.F.R. part 11 ..........................................................................5, 36

30 C.F.R. § 11.10(c) ........................................................................35

30 C.F.R. § 11.43 ..............................................................................35

30 C.F.R. § 72.700(a) ......................................................................35

42 C.F.R. part 84 ..........................................................................5, 36

42 C.F.R. § 84.10(c) ........................................................................35

71 Fed. Reg. 50122, 50163–64 (Aug. 26, 2006) ...................................48

Fed. R. Civ. P. 20 ....................................................................*passim*

Fed. R. Civ. P. 23 ...............................................................................*passim*

Guyon Knight, The CAFA Mass Action Numerosity Requirement:
    Three Problems with Counting to 100, 78 Fordham L. Rev. 1875,
    1896 (2010) ..............................................................................12, 14

Ky. R. Civ. P. 20.01 ....................................................................8, 21, 23

S. Rep. 109-14, 2005 U.S.C.C.A.N. ................................................20, 25

U.S. Dep't of Defense, "Defense Production Act Contract to Provide 39
    Million Masks" (Apr. 14, 2020), https://tinyurl.com/respiratordpa ..................33

2 William B. Rubenstein, *Newberg on Class Actions* § 6:25 (6th ed.
    2022) ..............................................................................12

## Statement in Support of Oral Argument

This Court has set video oral argument for April 18, 2023. Appellant 3M Company agrees that this case warrants oral argument. As this Court's order granting permission to appeal recognizes, the case presents issues of first impression in this Circuit concerning the Class Action Fairness Act. Argument will help this Court appreciate how the district court's novel reading of CAFA diverges from the plain statutory text and other Circuits' analyses of that text.

The appeal also involves important issues concerning federal-question jurisdiction and fraudulent joinder. Because of the general rule that remand orders are not appealable, this Court has limited opportunities to consider these critical questions. But this Court may consider them here because CAFA gives it jurisdiction to review the whole remand order. Argument would assist this Court in evaluating all the jurisdictional issues presented.

**Statement of Jurisdiction**

Following removal from state court, the district court had jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this action is a mass action under § 1332(d)(11). The district court also had federal-question and diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332(a), respectively.

This Court has jurisdiction under 28 U.S.C. § 1453(c)(1). 3M timely petitioned for permission to appeal within 10 days of the district court's September 27, 2022 remand order. This Court granted the petition on March 23, 2023.

**Statement of Issues**

This appeal arises out of two mass tort cases. In each, hundreds of current and former coal miners allege that they were injured by inhaling coal mine dust as a result of defective 3M respirators. The cases were filed in Kentucky state court. 3M removed them to federal court under the Class Action Fairness Act, which provides for federal jurisdiction over actions in which the "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). 3M also contended that the district court had federal-question "*Grable*" jurisdiction and that, because the in-state companies sued by Plaintiffs were fraudulently joined, the district court also had diversity jurisdiction. The

district court remanded the cases, rejecting each of 3M's grounds for removal. The questions presented for review are:

1. Whether the district court erred in holding that Plaintiffs did not propose to try jointly the monetary claims of 100 or more persons under 28 U.S.C. § 1332(d)(11).

2. Whether the district court erred in holding that Plaintiffs did not propose that their claims involve common questions of law or fact under 28 U.S.C. § 1332(d)(11).

3. Whether, having granted review under CAFA, this Court has jurisdiction to address the non-CAFA grounds for removal raised by 3M; and, if so, whether the district court erred in concluding that it lacked federal-question jurisdiction and that two local co-defendants were not fraudulently joined, thus precluding diversity jurisdiction.

## Statement of the Case

## I.    Factual Background

This appeal involves two cases presenting the tort claims of current or former coal miners against manufacturers and alleged suppliers of respirators. Plaintiffs allege that they used respirators while working as coal miners, that the respirators were defective, and that Plaintiffs developed coal workers' pneumoconiosis ("CWP") as a result.

*Brian Adams* was filed in Kentucky state court in April 2021. Complaint, R.1-1, PageID#269–319. The Complaint joins the claims of 248 Plaintiffs against seven "Manufacturer Defendants" who made respirators and six "Supplier Defendants" who allegedly sold those respirators to Plaintiffs' employers. *Id.*, PageID#274–76.[1] Two of the six Supplier Defendants (Mine Service Company and Kentucky Mine Supply Company) are local stores in Harlan and Hazard, Kentucky. *Id.* These two local stores are routinely joined in Kentucky litigation against respirator manufacturers. District Court Omnibus Order & Opinion ("Order"), R.34, PageID#1135; Transcript, R.1-9, PageID#558–61.

*Charles Mounts* was filed in Kentucky state court in September 2021. Complaint, R.1-1, PageID#53–96. The Complaint joins the claims of 323 Plaintiffs against the same seven Manufacturer Defendants and six Supplier Defendants.

---

[1] The seven Manufacturer Defendants are 3M Company, Mine Safety Appliances Company, American Optical Corporation, Cabot CSC Corporation, Cabot Corporation, Aearo Technologies LLC, and Aearo LLC. Since these lawsuits were filed, Aearo Technologies LLC and Aearo LLC have sought bankruptcy protection.

The six Supplier Defendants are Mine Service Company, Network Supply, Regina Mine Supply, Carbon Mine Supply LLC, M&M Mine Supply Company, and Kentucky Mine Supply Company.

The Complaints in *Adams* and *Mounts* are substantially identical. *See* Order, R.34, PageID#1126–30.[2] They allege that Plaintiffs "suffer from an occupational lung disease known as Coal Workers' Pneumoconiosis and/or Silicosis, commonly referred to as 'Black Lung', COPD and other injuries by virtue of the failure of respirators/dust masks Plaintiffs used to protect themselves from exposure to coal, rock, and sand dust" while working "as coal mine employee[s]." Complaint ¶ 1, R.1-1, PageID#277.

The Complaints further allege that "the Plaintiffs, during the scope of their employment, used one or more of the respirators/dust masks manufactured by the Respiratory Manufacturing Defendants and sold by [the Supplier Defendants] during the time they worked in coal mines in Pike County, Kentucky." Complaint ¶ 18, R.1-1, PageID#303.

The Complaints do not identify "when Plaintiffs experienced exposure, where they experienced exposure, what Respirator any specific Plaintiff wore, the identity of the employers," or the identity of any "Supplier Defendant linked to a specific Plaintiff." Order, R.34, PageID#1128.

---

[2] Given this similarity, unless otherwise indicated, this brief follows the district court's convention of citing the *Adams* Complaint, notice of removal, briefing, and order.

Federal law defines "respirators" and provides requirements for a product to be certified as a respirator. *See generally* 42 C.F.R. part 84 (1998–present); 30 C.F.R. part 11 (effective until 1998). The Manufacturer Defendants' respirators were or currently are certified by the National Institute for Occupational Safety and Health ("NIOSH") or a predecessor federal agency under the applicable regulations. *E.g.*, *Adams* Notice of Removal ("NOR"), R.1, PageID#7. Plaintiffs claim, however, that the Manufacturer Defendants have perpetrated an elaborate decades-long fraud against the federal government, alleging that a substantial portion of the respirator industry violated federal regulations governing respirators. Complaint ¶¶ 36–46, R.1-1, PageID#308–13.

Plaintiffs allege, for example, that 3M did not comply with NIOSH directives, did not inform purchasers that its respirators could not satisfy federal certification requirements, and failed to redesign the respirators to satisfy federal regulatory requirements. *Id.* ¶ 39, PageID#309. Plaintiffs also allege that 3M fraudulently represented that its respirators complied with federal law when they did not, and violated a federal statutory duty to disclose this alleged federal regulatory non-compliance. *Id.* ¶¶ 39, 41, PageID#309, #311.

## II.    Procedural Background

3M removed *Adams* and *Mounts* to federal district court along with four other cases with substantially identical complaints. Notices of Removal, R.1,

PageID#1–45 (*Adams*), #1–44 (*Mounts*); Order, R.34, PageID#1127 & nn. 2–4. The *Adams* and *Mounts* removals asserted federal jurisdiction under CAFA, federal-question jurisdiction, and diversity jurisdiction. NOR, R.1, PageID#7–8.[3] 3M also moved to sever each Plaintiff's claim into a separate civil action and to require repleading. Motion, R.13, PageID#633–63. Plaintiffs moved to remand. Motion, R.22, PageID#761.

The district court remanded the six cases in an omnibus order. Order, R.34, PageID#1150. Regarding CAFA jurisdiction, raised in *Adams* and *Mounts*, the district court recognized that minimal diversity was satisfied and that the amount in controversy was not contested. Order, R.34, PageID#1141. The district court concluded, however, that Plaintiffs had not proposed a joint trial, based on the Complaints' language and on Plaintiffs' counsel's conduct in a different case in state court. *Id.*, PageID#1141–49.[4] The district court also reasoned that Plaintiffs' claims did not involve "common questions of law or fact." *Id.*, PageID#1141–49.

On federal-question jurisdiction (raised in all six cases), the district court determined that the Complaints did not arise under federal law because the federal interest was not substantial and that exercising jurisdiction would upset the balance

---

[3] The other four cases were not removed on CAFA grounds, but were removed only on the bases of federal-question and diversity jurisdiction.

[4] That state court case was *Randy Adams, et al. v. 3M Co., et al.*, No. 20-CI-00382 (Pike Cty., Ky., Cir. Ct.). *Id.*, PageID#1147.

of federal and state judicial responsibilities. *Id.*, PageID#1130–34. On diversity jurisdiction (also raised in all six cases), the district court concluded that the two local Kentucky stores named as Supplier Defendants were not fraudulently joined (so the requirement of complete diversity among parties was not satisfied). *Id.*, PageID#1134–40.[5]

3M timely petitioned for permission to appeal. This Court granted the petition, concluding that the appeal presented previously unanswered questions that are "likely to recur" and would "evade review" absent appeal. *See* Order at 2 (6th Cir. March 23, 2023).

## Summary of the Argument

CAFA permits removal of mass actions "in which monetary relief claims of 100 or more persons are proposed to be jointly tried on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(D)(11)(B)(i). The district court erred in deciding two issues of first impression regarding that CAFA provision.

First, the district court erred in concluding that Plaintiffs did not propose a joint trial even though each Complaint on its face names more than 100 Plaintiffs

---

[5] After the cases were remanded, 3M moved unsuccessfully to stay them in state court. Recently, two of the lawyers who represent the Plaintiffs in these cases moved to stay all cases involving Plaintiffs' third counsel because they concluded that the third lawyer had concealed evidence that claims were time-barred.

and proposes "a" single "jury trial" and a single "judgment." This Court should follow every other circuit to address this issue and establish a bright-line rule that any mass action complaint naming more than 100 plaintiffs satisfies § 1332(d)(11)(B)(i)'s joint-trial proposal requirement.

Second, the district court erred in concluding that these cases do not involve common questions of law or fact even though Plaintiffs use Kentucky's permissive joinder rule, which conditions joinder on a question of law or fact "common to all these persons." Ky. R. Civ. P. 20.01. The U.S. Supreme Court has interpreted other portions of the mass-action provision to be consistent with Federal Rule of Civil Procedure 20. Likewise, this Court should use the established meaning of "common questions of law or fact" under Rule 20 to hold that a mass-action complaint's putative permissive joinder of more than 100 plaintiffs' claims satisfies that requirement for CAFA removal. Conditioning removal on satisfaction of Rule 23's more demanding "commonality" requirement, as the district court did here, undermines CAFA's letter and spirit.

This Court also can, and should, address the scope of its appellate jurisdiction over CAFA remand orders. When a court of appeals grants a permissive appeal, CAFA permits the court to review "an order of a district court granting or denying a motion to remand." 28 U.S.C. § 1453(c)(1). This Court should follow the majority of circuits to address this issue and rule that it has

appellate jurisdiction over the entire remand order—CAFA grounds and non-CAFA grounds alike. Such a ruling would track the Supreme Court's reading of the word "order" in other interlocutory appeal statutes.

If the Court concludes that it has jurisdiction over the entire remand order, it should address the non-CAFA questions presented and reverse the district court's decision rejecting 3M's federal-question and diversity grounds for removal. Although the complaints do not plead a federal cause of action, they attack virtually the entire federally certified respirator industry, presenting substantial questions of federal regulatory law that create "arising under" jurisdiction under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005). And Plaintiffs' choice to fraudulently join two in-state suppliers who are actually immune from liability under Kentucky's innocent seller statute does not defeat diversity removal. The same artful pleading tactic of fraudulently joining the same two local stores is routinely being used in other cases involving thousands of Kentucky plaintiffs. This CAFA appeal presents this Court with the opportunity to address these critical and recurring jurisdictional issues that would otherwise escape review.

## Standard of Review

This Court reviews a district court's remand order *de novo*. *Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 908 (6th Cir. 2017). "[N]o

antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Op. Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). District court remand orders should be reversed when they rest on the "notion that removal under CAFA should be met with a level of skepticism and resistance." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022).

## Argument

### I.    3M properly removed these cases under CAFA.

#### A.    CAFA should be liberally construed to favor federal jurisdiction.

Congress passed CAFA to "relax" the requirements for federal jurisdiction, "mak[ing] it easier" for federal courts to hear class and mass actions. *Nessel ex rel. Mich. v. AmeriGas Partners, L.P.*, 954 F.3d 831, 834 (6th Cir. 2020). That means "CAFA's provisions should be read broadly, with a strong preference" that qualifying cases "be heard in a federal court." *Dart Cherokee*, 574 U.S. at 89. (cleaned up). So, no anti-removal presumption applies to cases invoking CAFA. *Id*. CAFA requires just minimal diversity. *Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 955 (6th Cir. 2017). And the $5 million amount in controversy is aggregated. 28 U.S.C. § 1332(d)(6).

Another way CAFA relaxes federal jurisdiction is through its mass action provision. Subject to an exception that is inapplicable here, a CAFA "mass action"

is "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(D)(11)(B)(i). The action also must satisfy CAFA's minimal diversity and $5,000,000 aggregate amount-in-controversy requirements. *Id.* In other words, "mass actions" under CAFA "are collective actions that utilize large-scale joinder or other consolidation mechanisms rather than class certification pursuant to Rule 23." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 319 (3d Cir. 2022). As this Court recognized in granting permission to appeal, this Court has not resolved how to determine whether plaintiffs' claims are "proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(D)(11)(B)(i); *see* Order at 2 (6th Cir. March 23, 2023).

**B.    Plaintiffs proposed these cases to be tried jointly.**

CAFA provides that mass actions are removable only if "monetary relief claims of 100 or more persons are *proposed to be tried jointly* . . . ." 28 U.S.C. § 1332(D)(11)(B)(i) (emphasis added). This Court should hold that the *Adams* and *Mounts* cases meet that requirement because in each of those cases, more than 100 Plaintiffs were joined in a single complaint.

1.    **A joint trial is proposed when 100 or more plaintiffs join in a single complaint.**

When "100 or more" plaintiffs have joined their claims in one complaint, courts hold that is a proposal for a joint trial under CAFA. *Lester v. Exxon Mobil*, 879 F.3d 582, 587–89 (5th Cir. 2018); *Ramirez v. Vintage Pharms.*, 852 F.3d 324, 329 (3d Cir. 2017); *Corber v. Zanodyne Pharm.*, 771 F.3d 1218, 1225–26 & n.8 (9th Cir. 2014) (en banc); *Atwell*, 740 F.3d at 1163–66; *Abbott Labs.*, 698 F.3d at 572; *Bullard v. Burlington N. Santa Fe Ry.*, 535 F.3d 759, 762 (7th Cir. 2008); *accord* 2 William B. Rubenstein, *Newberg on Class Actions* § 6:25 (6th ed. 2022) ("[C]ourts have concluded that a state court complaint which joins more than 100 plaintiffs satisfies [the] requirement" of a proposal for a joint trial); Guyon Knight, The CAFA Mass Action Numerosity Requirement: Three Problems with Counting to 100, 78 Fordham L. Rev. 1875, 1896 (2010) ("Courts have universally found that joining more than 100 plaintiffs in a single complaint satisfies this intentionality requirement.").

It is "clear" from CAFA's "text and structure" that plaintiffs propose a joint trial "by naming 100 or more plaintiffs in a single complaint." *Scimone v. Carnival Corp.*, 720 F.3d 876, 881 (11th Cir. 2013). The statute plainly sets "100 or more persons" as a threshold requirement. 28 U.S.C. § 1332(d)(11)(B)(i). When that requirement is satisfied, courts then must look to what those persons have "proposed" or "offer[ed] for consideration, discussion, acceptance, or adoption."

*Scimone*, 720 F.3d at 881 (quoting "Proposal," Webster's Third New International Dictionary 1819 (2002)).

"[O]ne complaint implicitly proposes one trial." *In re Abbott Labs.*, 698 F.3d 568, 572 (7th Cir. 2012). A complaint's language reinforces that implication by demanding, for example, "a jury trial," instead of multiple or separate trials; "an award of damages," instead of multiple awards; or "a judgment," instead of multiple judgments. *Ramirez*, 852 F.3d at 329. Such "instances of singular language, taken together, provide strong evidence of a proposal for a joint trial." *Id.*

A complaint's structure also can imply a proposal for a joint trial. *Id.* "Where a single complaint joins more than 100 separate claims involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial." *Id.* (citations omitted). After all, "one complaint, one trial, is the norm." *Koral v. Boeing Co.*, 628 F.3d 945, 947 (7th Cir. 2011). And the complaint is where plaintiffs "offer" their claims "for consideration, discussion, acceptance, or adoption." *Scimone*, 720 F.3d at 881 (quoting "Proposal," Webster's Third New International Dictionary 1819 (2002)).[6]

---

[6] Of course, plaintiffs also *may* explicitly propose a joint trial through "a clear textual request for a joint trial contained within the complaint, a motion, or some other filing by a group of plaintiffs." *Ramirez*, 852 F.3d at 329 (citing *Atwell*

Whether the proposal is explicit or implicit, courts have "universally found that joining more than 100 plaintiffs in a single complaint satisfies this intentionality requirement." Knight, CAFA Mass Action, 78 Fordham L. Rev. at 1896. The cases in which courts do not find a proposal for a joint trial involve complaints joining the claims of fewer than 100 plaintiffs. *See Parson v. Johnson & Johnson*, 749 F.3d 879, 888–90 (10th Cir. 2014); *Scimone*, 720 F.3d at 883–84. Such complaints fail the threshold statutory requirement of "more than 100 persons." 28 U.S.C. § 1332(d)(11)(B)(i). That means plaintiffs can structure a complaint to avoid proposing a joint trial by filing "separate lawsuits," each joining the claims of fewer than one hundred plaintiffs. *See Scimone*, 720 F.3d at 883–84.

This Court has recognized the importance of bright lines demarcating CAFA jurisdiction. *See Grasier v. Visionworks of Am., Inc.*, 819 F.3d 277, 283–85, 285 (6th Cir. 2016) (adopting "bright-line rule" regarding when 28 U.S.C. § 1446(b)'s thirty-day removal clock beings to run in CAFA cases because a contrary rule is "not administrable"). A bright-line rule establishing that a mass-tort complaint joining the claims of 100 or more plaintiffs is presumed to propose a joint trial under CAFA is warranted. That bright-line rule will allow district courts to efficiently determine whether federal jurisdiction exists without having to engage

---

*v. Boston Sci.*, 740 F.3d 1160, 1163 (8th Cir. 2013)); *Abbott Labs.*, 698 F.3d at 572–73).

in the fact-intensive analysis the district court performed here. It is also the reasonable rule, because the presumption of federal jurisdiction arises from CAFA's own statutory requirement that mass actions must involve 100 or more plaintiffs. 28 U.S.C. § 1332(d)(11)(B)(i).

> **2.    Plaintiffs here proposed a joint trial, and the district court erred in concluding otherwise.**

Plaintiffs proposed a joint trial. The claims of 248 Plaintiffs are joined in *Adams* and the claims of 323 Plaintiffs are joined in *Mounts*, in each case far more than necessary for CAFA mass action jurisdiction. Their joinder in single complaints implies joinder for trial, absent a "conclusive countervailing indication to serve as a rebuttal." *Ramirez*, 852 F.3d at 331. And there is no such countervailing indication here. Rather, the implication is reinforced by the Complaints' shared, explicit language: Plaintiffs pray for "*a* trial by jury," not multiple trials, and a singular "judgment," not multiple judgments. Complaint, R.1-1, PageID#318. These "instances of singular language, taken together, provide strong evidence of a proposal for a joint trial." *Ramirez*, 852 F.3d at 329.

The district court's analysis of the Complaints' language is flawed. Instead of following what the Complaints said—that more than 100 Plaintiffs sought "*a* trial by jury" and a singular "judgment" in each case—the district court labored to find ambiguities. *See* Order, R.34, PageID#1141–42. For example, the district court discounted the request for "a trial by jury" because this came within the

prayer for relief, which the court believed was "an atypical place for jury trial phraseology." *Id.* PageID#1141. But that unambiguous language has the same plain meaning no matter where it appears, and no authority suggests otherwise. The district court's reliance on "and/or" is similarly misplaced. When Plaintiffs requested a singular "judgment against the Defendants, jointly, severally, and/or individually," they were requesting one judgment while recognizing that the liability of the Defendants might be joint, several, or individual. Complaint, RE 1-1, PageID#318. The district court's ruling is inconsistent with the Complaints' language. It is also inconsistent with decisions holding that "instances of singular language, taken together, provide strong evidence of a proposal for a joint trial." *Ramirez*, 852 F.3d at 329. And fly-specking the Complaints for reasons to deny federal jurisdiction evinces a hostility toward CAFA removals inconsistent with Supreme Court precedent favoring them. *See Dart Cherokee*, 574 U.S. at 89.

The district court's reasoning that the Complaint suggested "an effort" not to propose a joint trial is likewise misplaced. Order, R.34, PageID#1142. CAFA's mass action provision provided Plaintiffs an easy way to avoid federal jurisdiction: not joining "the monetary claims of more than 100 persons." 28 U.S.C. § 1332(d)(11)(B)(i); *see Scimone*, 720 F.3d at 883–84 ("plaintiffs have the ability to avoid § 1332(d)(11)(B)(i) jurisdiction by filing separate complaints naming less than 100 plaintiffs and by not moving for or otherwise proposing joint trial in the

state court"). Having joined those claims, while failing to provide an "explicit and unambiguous disclaimer" and requesting a singular jury trial and a singular judgment, Plaintiffs proposed a joint trial. *Ramirez*, 852 F.3d at 327.

The district court also erred by evaluating what Plaintiffs proposed based on what the parties said *after* removal. *See* Order, R.34, PageID#1149. "Because jurisdiction is determined as of the time of removal, events occurring after removal . . . do not oust jurisdiction." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000) (holding that post-removal stipulation to seek less than $75,000 did not prevent removal of complaint seeking more than $75,000); *accord Visendi v. Bank of America, N.A.*, 733 F.3d 863, 868 (9th Cir. 2013) ("It is well settled that post-filing developments do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing." (cleaned up)). CAFA's text underscores the district court's error. Evaluating what plaintiffs "proposed" necessarily requires viewing the pleadings as they existed at the time of removal. 28 U.S.C. § 1332(d)(11)(B)(i). That plain language provides no support for the district court's focus on "post-removal posturing." Order, R.34, PageID#1149.

The district court further erred by determining what *these* Plaintiffs proposed based on how *other* plaintiffs represented by the same counsel had litigated a different case not before the court. *See* Order, R.34, PageID#1147–49. Excepting fraudulent joinder, which allows courts to pierce deceptive pleadings and examine

a broader universe of evidence, the propriety of removal depends on the pleading that the plaintiffs chose to bring. *See Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 711 (6th Cir. 2012) (evaluating removal "by reference to the well-pleaded complaint" (cleaned up)); *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432–33 (6th Cir. 2012) (discussing fraudulent joinder); *Nerad v. AstraZeneca Pharm., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) ("[F]raudulent joinder claims are assertions that the pleadings are deceptive."). The Complaints proposed a joint trial on ostensibly common questions, which should be the end of the bright-line analysis. *See Ramirez*, 852 F.3d at 327. What other plaintiffs did in state court after filing their complaint is immaterial, and it is not the district court's job to transform what *these* Plaintiffs actually did into what they now wish they had done.

The two cases the district court cited to justify this approach do not support remand. Order, R.34, PageID#1147 n.15. Both involved complaints—critically, each with fewer than 100 plaintiffs—removed to federal court by defendants who sought to consolidate them to generate more than 100 plaintiffs. *See Parson*, 749 F.3d at 888; *Scimone*, 720 F.3d at 881. Both courts considered the litigation conduct of the *plaintiffs in the cases that were removed*, not the litigation conduct of plaintiffs in separate cases not removed, to determine that because each removed case individually had fewer than 100 plaintiffs, they did not satisfy CAFA. *See Parson*, 749 F.3d at 888; *Scimone*, 720 F.3d at 881. In fact, *Scimone* suggested that

in circumstances like these, in which "100 or more plaintiffs" join in "a single complaint," it is "clear from the statute's text and structure" that they "can propose a joint trial." 720 F.3d at 881. The district court's inquiry into how different plaintiffs litigated a separate case is irrelevant to whether CAFA provides jurisdiction over these cases.

### C.   Plaintiffs proposed a joint trial on the ground that their claims involve common questions of law or fact.

CAFA also requires that the plaintiffs proposed that their claims be tried jointly "on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i).This Court should hold that this requirement is satisfied here because Plaintiffs filed a joint complaint purporting to meet the standard for permissive joinder of parties. Permissive joinder requires the existence of common questions of law or fact. *See* Fed. R. Civ. P. 20(1)(B) (requiring "any question of law or fact common to all plaintiffs").

### 1.   Plaintiffs propose that their claims involve common questions when they purport to meet the permissive joinder standard.

The phrase "common questions of law or fact" has an established and expansive meaning under Rule 20. *See, e.g.*, *UMWA v. Gibbs*, 383 U.S. 715, 724 (1966). When Congress chooses to use established legal phrases, that choice is presumed to be intentional. *Air Wisc. Airlines Corp. v. Hoeper*, 571 U.S. 237, 248 (2014); *accord Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1060–61

19

(6th Cir. 2014) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989)). Using that "term of art" shows that in CAFA, Congress "adopt[ed]" that term's accepted, expansive meaning. *Air Wisc. Airlines*, 571 U.S. at 248.

Moreover, the Supreme Court has compared other language in the mass action provision to Rule 20, holding that Congress used the terms "persons" and "plaintiffs" in CAFA in the same way those terms are used in Rule 20. *Miss. ex rel. Hood v. AU Optronics*, 571 U.S. 161, 169–70 (2014). The Supreme Court's reasoning reinforces that conclusion. As Congress did with "persons" and "plaintiffs," it chose in CAFA to use an established legal phrase, "common questions of law or fact." *See id.*

Rule 23 also includes a requirement for class actions that "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2). But Rule 20, not Rule 23, is the appropriate analogue to CAFA's "mass action" provision. Section 1332(d)(11) provides for federal jurisdiction over mass actions, even though they do not satisfy Rule 23's exacting requirements for class certification. *See Robert D. Mabe*, 43 F.4th at 318–19 ("[M]ass actions are collective actions that utilize large-scale joinder or other consolidation mechanisms rather than class certification pursuant to Rule 23."); *see also* S. Rep. 109-14, 2005 U.S.C.C.A.N. at 44, 48 (describing hypothetical case in which over 100 plaintiffs jointly file mass action against out-of-state manufacturer but also name local store). And when

Congress wanted CAFA's requirements to depend on Rule 23, such as for CAFA's definition of class action, it said so. *See* 28 U.S.C. § 1332(d)(1)(B); *Nessel*, 954 F.3d at 834–35 (discussing this provision).

> **2.** **Plaintiffs proposed that their claims involve common questions, and the district court committed numerous errors in concluding otherwise.**

Plaintiffs proposed trying their claims jointly on ostensibly common questions. For starters, they joined their claims under Kentucky Court Rule 20.01. Like its federal counterpart Rule 20, Kentucky Court Rule 20.01 requires a "question of law or fact common to all these persons" to "arise in the action." Ky. R. Civ. P. 20.01; *see, e.g.*, *Riley v. Ohio Cas. Ins. Co.*, 855 F. Supp. 2d 662, 673 & n.6 (W.D. Ky. 2012) ("Kentucky's rule for permissive joinder and the federal rule for permissive joinder are, for all [intents and] purposes, identical. *Compare* [Ky. R. Civ. P.] 20.01 *with* Fed.R.Civ.P. 20."). By joining their claims together under that Kentucky court rule, Plaintiffs necessarily proposed that their claims involved common questions of law or fact. *See* Ky. R. Civ. P. 20.01; *see also Ramirez*, 852 F.3d at 327–31; *Scimone*, 720 F.3d at 881 (discussing definition of "propose").

The Complaints reinforce this conclusion. For example, Plaintiffs allege that the Manufacturer Defendants have been perpetrating fraud for decades. Complaint, R.1-1, PageID#308–13 (¶¶ 36–46). Allegations of that kind, such as that 3M's federally certified respirators do not comply with federal certification

requirements, involve many questions of law and fact that are equally applicable to all Plaintiffs who allegedly used those respirators.

The district court conducted the wrong inquiry. CAFA required it to consider whether Plaintiffs "proposed" that their claims "be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). The district court erred by instead focusing on whether common questions of law or fact actually existed. *See* Order, R.34, PageID#1144–46 & n.13. That analysis reads "proposed" out of the statute, a fundamental error of statutory interpretation. *See, e.g.*, *Day v. James Marine, Inc.*, 518 F.3d 411, 417 (6th Cir. 2008) ("[W]e expect every word in the statute to have meaning," and "we try to give effect to all the words to avoid an interpretation which would render words superfluous or redundant." (cleaned up)).

The district court's reliance on *Visendi v. Bank of America, N.A.*, 733 F.3d 863 (9th Cir. 2013) (cited at Order, R.34, PageID#1145), confirms that error. In *Visendi*, the Ninth Circuit reversed a district court for doing what the district court did here, remanding a mass action removed under CAFA because in the district court's view, the claims were misjoined. 733 F.3d at 867–68. The Ninth Circuit reversed based on the plain text—CAFA requires only that the *plaintiffs propose* a joint trial involving ostensibly common questions. *Id.* at 868. Even though the claims were in fact misjoined under Rule 20, the Ninth Circuit correctly recognized

that this did not resolve the statutory question of whether the *plaintiffs proposed* a

joint trial. *Id.* at 870–71. The "massive, multi-plaintiff lawsuit" at issue in *Visendi*

was "a prototypical mass action subject to removal under CAFA. *That the plaintiffs*

*are misjoined does not undermine federal jurisdiction.*" *Id.* at 871 (emphasis

added). That reasoning, effectuating CAFA's plain text, applies equally here.

Whether the joinder here would actually satisfy Kentucky Court Rule 20.01 or

federal Rule 20 is immaterial to whether *Plaintiffs proposed* a joint trial based on

ostensibly common questions. *See Visendi*, 733 F.3d at 867–71.

Even if the district court were correct that the Complaints needed to go

beyond proposing a joint trial on ostensibly common questions, and instead were

required to plead common questions, the Complaints do so. As discussed above,

Plaintiffs joined their claims under federal Rule 20's Kentucky counterpart,

requiring a "question of law or fact common to all these persons" to "arise in the

action." Ky. R. Civ. P. 20.01. That is a representation that the Complaints present

common questions. Plaintiffs now may wish they had pleaded their Complaints

differently, but they are bound by the assertions in their Complaints, and cannot

now change that record. *See Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th

Cir. 2000) ("Plaintiffs are bound by admissions in their pleadings . . . ."); *accord*

*Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000)

("[U]nder federal law, stipulations and admissions in the pleadings are generally

binding on the parties and the Court." (quoting *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988)); *Ferguson v. Neighborhood Hous. Servs.*, 780 F.2d 549, 551 (6th Cir. 1986) ("[J]udicial admissions must bind parties in order to ensure that counsel plead their case in good faith.").

Moreover, even though the district court recognized that federal Rule 20 was relevant to analyzing CAFA's statutory text, the court failed to account for Plaintiffs' representation that their Complaints satisfied Rule 20. *See* Order, R.34, PageID#1142. Plaintiffs told the district court that their Complaints "clearly" involve a "question of law or fact common to all Plaintiffs," because whether "Defendants' respirators were defective and a proximate cause of Plaintiffs' CWP" would be "the same question of law" "common to all Plaintiffs." Response, R.21, PageID#716. Contrary to the district court's reasoning, that makes these cases analogous to *Visendi*, whose complaint alleged the plaintiffs "were victims of a common plan and scheme." 733 F.3d at 868 (cleaned up).

The district court then erroneously conflated CAFA's more lenient standard with Rule 23's exacting requirements for class certification. *See* Order, R.34, PageID#1142–43. The Supreme Court has compared the requirements for a CAFA mass action to Rule 20, not Rule 23. *AU Optronics*, 571 U.S. at 169–70. CAFA's text offers no reason to believe that although Congress drew from Rule 20 when defining "persons" and "plaintiffs," it intended that Rule 23's standards should

apply when defining "common questions of law or fact." Nor does the district court's imposition of a Rule 23 analysis reckon with the established meaning of "common questions of law or fact" as favoring joinder. *See Gibbs*, 383 U.S. at 724. As in *AU Optronics*, this Court should presume that Congress adopted this established meaning. *See* 571 U.S. at 169–70; *see also Air Wisc. Airlines*, 571 U.S. 237, 248 (2014); *Vander Boegh*, 772 F.3d at 1060–61.

The district court's approach also conflates the *procedural* requirements for class certification under Rule 23 with CAFA's threshold *jurisdictional* question of whether § 1332(d)(11)(B) is satisfied. Class certification is not a jurisdictional requirement; it is a procedural determination to be made as a case progresses. *Cf. Bullard*, 535 F.3d at 761 (rejecting construction of CAFA's mass action provision that would turn on developments after the filing of the complaint). If satisfying Rule 23's commonality requirement is a prerequisite to CAFA removal jurisdiction, defendants will be forced to surrender objections to class certification or abandon arguments for individual trials. A defendant's statutory right to a federal forum for a mass action should not come at such a price. Indeed, the principal impetus for CAFA was concern about the filing of questionable class and mass actions in state court. S. Rep. 109-14, 2005 U.S.C.C.A.N. at 3–6. What sense would it make to expand federal jurisdiction over large class and mass actions

while at the same time forcing defendants to forgo critical arguments against class certification or mass trials?

Since Congress provided federal jurisdiction over mass actions through CAFA even when they do not satisfy Rule 23, imposing Rule 23's exacting commonality requirement on mass actions is counterintuitive. Imposing Rule 23's exacting requirement smacks of an anti-removal presumption, treating CAFA mass actions with "skepticism and resistance" contrary to the express provision for federal jurisdiction over mass actions. *Jauregui,* 28 F.4th at 993; *accord Dart Cherokee*, 574 U.S. at 89.

## II.    3M properly removed these cases on non-CAFA grounds.

### A.    This Court can and should consider the non-CAFA bases for removal.

Although remand orders are generally not reviewable on appeal, Congress has authorized this Court to review CAFA remand orders. 28 U.S.C. §§ 1453(a), (c)(1). Having exercised that authority, this Court should exercise appellate jurisdiction over the entire order granting the motion to remand. 28 U.S.C. § 1453(c)(1). That would include the parts of the order concerning federal-question and diversity jurisdiction.

A "court of appeals may accept an appeal from an *order* of a district court granting or denying a motion to remand a class action to the State court from which it was removed." 28 U.S.C. § 1453(c)(1) (emphasis added). Most circuits

considering the issue have interpreted this grant of appellate jurisdiction to allow courts to review the entire order. *See Lu Junhong v. Boeing*, 792 F.3d 805, 811 (7th Cir. 2015) (discussing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451–52 (7th Cir. 2005)); *Nevada v. Bank of Am.*, 672 F.3d 661, 665, 672–73 (9th Cir. 2012); *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1247 (10th Cir. 2009). *But see Stewart v. Entergy Corp.*, 35 F.4th 930 (5th Cir. 2022).[7]

The straightforward majority reasoning is that when Congress said "order," it meant order, not parts of the order. "[O]nce the district court's 'order' was before the court of appeals, all of the reasons the district court gave in support of that order were reviewable." *Lu Junhong*, 792 F.3d at 811 (discussing *Brill*, 427 F.3d at 451–52). "There is no language limiting the court's consideration solely to the CAFA issues in the remand order." *Coffey*, 851 F.3d at 1247.

That reasoning builds on the Supreme Court's holding that "order" as used in 28 U.S.C. § 1292(b) allows "jurisdiction over any question that is included

---

[7] The Fifth Circuit disagrees with the majority reading of § 1453. *See Stewart*, 35 F.4th at 935–36. Although "some of [its] sister circuits read § 1453" as granting "jurisdiction to review all the issues decided in the remand order," the Fifth Circuit maintains that *BP* does not "unequivocally overrule[ ]" Fifth Circuit precedent prohibiting jurisdiction over non-CAFA issues. *Id.* at 935. But the Fifth Circuit's reading of § 1453(c)(1)'s time limits and legislative history to suggest a "unique purpose" does not account for Congress's use of "order." *See id.* at 935–36. The Fifth Circuit's rationale also depends on pre-*BP* circuit precedent prohibiting jurisdiction over non-CAFA issues, which is, of course, not binding on this Court. *See id.*

within the order that contains the controlling question of law." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 204–05 (1996). Just as this Court "may address any issue fairly included within the certified order [under section 1292(b)] because it is the *order* that is appealable," so may it exercise appellate jurisdiction over any issue fairly included within a CAFA remand order. *Id.* at 205 (cleaned up); *Brill*, 427 F.3d at 446, 451–52 (so holding).

Most Circuits' plain reading of the statute was correct even before the Supreme Court's recent decision in *BP v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021). *BP* confirms it. In *BP*, the Supreme Court reversed the Fourth Circuit's holding that it lacked appellate jurisdiction to review bases for removal beyond those in 28 U.S.C. §§ 1442 (federal officer removal) and 1443 (civil rights removal). 141 S. Ct. at 1543. There, as here, "the district court's remand order rejected *all* of the defendant's grounds for removal." *Id.* at 1537. But the Supreme Court held that "when a district court's removal order rejects all of the defendants' grounds for removal, § 1447(d) authorizes a court of appeals to review each and every one of them. After all, *the statute allows courts of appeals to examine the whole of a district court's 'order,'* not just some of its parts or pieces." *Id.* at 1538 (emphasis added).

In so ruling, the Supreme Court relied on *Yamaha*'s holding that when a court of appeals has jurisdiction over an order under 28 U.S.C. § 1292(b), it "may

address any issue fairly included." *Id.* (quoting 516 U.S. 199, 205 (1996)); *see also Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 851 (6th Cir. 2023) (holding that entire order remanding case removable under section 1442(a)(1) could be reviewed; reviewing both section 1442 and federal-question grounds for jurisdiction). That same conclusion follows here. Congress gave this Court jurisdiction to review the entire remand order.

This Court should review the entire order, including the district court's determinations about federal-question and diversity jurisdiction. These questions are important to many pending respirator claims, but they also have broader relevance. The federal government has a substantial interest in ensuring that current and former respirator regulations and certifications are not called into dispute, particularly given the importance of respirators to many industrial workers and healthcare professionals. And because of § 1447(d), this Court has limited opportunities to develop its law on fraudulent joinder.

### B.   3M properly removed these cases based on federal-question jurisdiction.

Respirators are federally regulated products. The central theme of Plaintiffs' fraud claim is that the Manufacturer Defendants—effectively the entire respirator industry—perpetrated a decades-long fraud on the federal agencies that regulate respirators. That substantial federal-question arises under federal law.

Congress has authorized two paths for claims to "arise under" federal law. 28 U.S.C. § 1331; *Gunn v. Minton*, 568 U.S. 251, 257 (2013). The first, "when federal law creates the cause of action asserted," does not apply. *Gunn*, 568 U.S. at 257. But even a state-law claim like the ones Plaintiffs make here may "arise under" federal law: "[F]ederal jurisdiction over a state-law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 258. In these circumstances, federal "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)). The absence of a federal private right of action is "not dispositive" of congressional intent. *Grable*, 545 U.S. at 318 (discussing *Merrell Dow Pharma. Inc. v. Thompson*, 478 U.S. 804 (1986)).

The *Grable* requirements for federal jurisdiction are met here.

## 1.    Plaintiffs' fraud claim necessarily raises a federal question.

The first requirement, "necessarily raising" a federal question, is a low bar. A federal issue is necessarily raised when resolving it requires deciding a federal issue. *Gunn*, 568 U.S. at 259 (resolving federal patent issue was necessary to

decide legal malpractice implicating that patent); *see, e.g.*, *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 569–70 (6th Cir. 2007) (en banc) (resolving contract dispute required interpreting Internal Revenue provision implicated by contract).

Interpreting and analyzing federal regulations is essential to Plaintiffs' fraud claim. In various ways, Plaintiffs allege that none of the Manufacturer Defendants' respirators complied with federal regulations and that it was fraudulent for the Manufacturer Defendants to represent that their products did comply. Complaint ¶¶ 36–46, R.1-1, PageID#308–13. But federal agencies did, in fact, certify the 3M products at issue beginning in 1972, and NIOSH continues to do so today as to 3M's 8210 N95 respirator. Certifications, R.1-2, PageID#321–23; R.1-3, PageID#325–26; R.1-4, PageID#328–29.

Just as in *Gunn*, then, Plaintiffs' complaint necessarily asks the trier of fact to analyze and interpret federal law and regulations. *See Gunn*, 568 U.S. at 259. That means their claim "necessarily raises" federal issues. The district court did not suggest otherwise. *See* Order, R.34, PageID#1132–34.

### 2.    The federal issue is actually disputed.

The next requirement is equally straightforward. The parties disagree about the federal issue's resolution, so it is actually disputed. *See Gunn*, 568 U.S. at 259. Plaintiffs have not contested this issue.

### 3.     The federal issue is substantial.

The substantiality inquiry considers the "importance to the federal system as a whole," not simply the importance to the parties. *Gunn*, 568 U.S. at 260. This Court balances four factors to evaluate substantiality:

> (1) whether the case includes a federal agency, and particularly, whether the agency's compliance with a federal statute is in dispute;
>
> (2) whether the federal question is important (*i.e.*, not trivial);
>
> (3) whether a decision on the federal question will resolve the case (*i.e.*, the federal question is not merely incidental to the outcome); and
>
> (4) whether a decision on the federal question will control many other cases (*i.e.*, the issue is not anomalous or isolated).

*Estate of Cornell v. Bayview Loan Serv., LLC*, 908 F.3d 1008, 1015 (6th Cir. 2018). "[N]o single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." *Mikulski*, 501 F.3d at 570.

A case presents a substantial federal question, for example, when an agency's application of its regulations is central to the dispute, even if the agency is not a party. In *Grable*, a quiet title action between two private citizens turned on whether the IRS had properly applied a federal statute. The federal system had a "direct interest in the availability of a federal forum" that could pass judgment on the agency's application of federal law. *Grable*, 545 U.S. at 315. A lawsuit concerning a single federally regulated product, by contrast, did not present a substantial federal question, because whether that one product complied with

federal law "lack[ed] importance more generally to the federal regulatory regime" or other manufacturers' products. *Burrell v. Bayer Corp.*, 918 F.3d 372, 385 (4th Cir. 2018) (citation omitted).

These cases are not about a single product: Plaintiffs' Complaints put virtually the entire respirator industry and its regulating agencies on trial. Respirators are federally certified safety equipment, relied upon by millions of people each day. For that reason, the federal government invoked the Defense Production Act to order their increased production during the pandemic.[8] Plaintiffs allege that 3M and other manufacturers have, since the 1970s, fraudulently maintained federal certification of these key safety products, despite federal testing and approvals. Determining whether this fraud occurred is important to the federal system as a whole. The district court erred by concluding otherwise.

### a.    Plaintiffs' allegations implicate agency action.

Plaintiffs' fraud claim disputes whether federal agencies complied with applicable law. The relevant federal agencies (first the Bureau of Mines, later NIOSH and MSHA) have repeatedly evaluated the Manufacturer Defendants' respirators against federal regulatory requirements and certified them as compliant.

---

[8] *See, e.g.*, U.S. Dep't of Defense, "Defense Production Act Contract to Provide 39 Million Masks" (Apr. 14, 2020), https://tinyurl.com/respiratordpa. This Court may take judicial notice of this public record. *See, e.g.*, *Ferguson*, 681 F.3d at 834.

The agencies told 3M, for example, that it could "publicize the fact" that its respirators "met the requirements" of the relevant regulations. Certifications, R.1-2, PageID#321–23; R.1-3, PageID#325–26; R.1-4, PageID#328–29. Those certifications remained in place for decades as to the 8710 and 8715 respirators Plaintiffs allegedly used. And the successor 3M 8210 N95 respirator, referenced throughout the Complaint and allegedly part of the fraud, remains federally certified and widely used. Complaint ¶ 36, R.1-1, PageID#308; Certification, R.1-4, PageID#328–29.

The district court thus erred by concluding that the Complaint does not implicate a "challenge to a regulation or a dispute over the meaning of a standard." Order, R.134, PageID#1133. Despite the repeated agency certifications evidencing the respirators' compliance with regulations, Plaintiffs allege that Manufacturer Defendants needed to "redesign [their respirators] to meet federal regulatory requirements" but sold respirators that "could not and did not comply with federal certification regulation." Complaint ¶ 39, R.1-1, PageID#309–10. Plaintiffs are necessarily challenging federal agencies' (and the Manufacturer Defendants') compliance with federal law. *See Estate of Cornell*, 908 F.3d at 1015.

The district court also failed to consider that Plaintiffs' claim necessarily attacks the agencies' role in testing respirators. Regulations required the relevant agency (NIOSH or a predecessor) to "examin[e], inspect[ ], and test[ ]" products

34

submitted to determine whether they satisfied the federal legal requirements to be certified respirators. *See, e.g.*, 30 C.F.R. § 11.10(c) (1985). That remains a requirement of federal law. *See, e.g.*, 42 C.F.R. § 84.10(c) (2021). Moreover, the district court failed to give weight to the agency's authority to audit quality control, which the Complaint alleges NIOSH exercised over the Manufacturing Defendants. *See* Complaint, R.1-1, PageID#309–10; 30 C.F.R. § 11.43.

### b.    The federal question is important.

Whether federal agencies complied with federal law in certifying key safety products is important. Federal law recognizes federal regulations' vital role in protecting miners' safety. *See, e.g.*, Federal Coal Mine Health and Safety Act of 1969, Pub. L. 91-173, § 2(g), 83 Stat. 742, 743 (1969). Federal law also requires mine operators to make federally certified respirators available and to maintain an adequate supply of respirators (although respirator use cannot be substituted for compliance with dust control rules). 30 U.S.C. § 842(h); 30 C.F.R. § 72.700(a).

The Complaint reinforces this importance. Plaintiffs allege that their mining employers relied on "representations of the safety of" the respirators when purchasing them for Plaintiffs. Complaint, R.1-1, PageID#312. If, as Plaintiffs allege, many federally certified respirators have been fraudulently certified for decades, then these important aims of federal law have been thwarted, across an industry.

The district court erred by concluding that the federal question was not important because it implicated former respirator regulations under 30 C.F.R. part 11, effective from the 1970s through 1998. *See* Order, R.34, PageID#1133. The Complaint alleges that the fraud extends to the 3M 8210 N95, a respirator *currently* certified under 42 C.F.R. part 84 (effective 1998 to present) and a key safety product, as evidenced by the COVID-19 pandemic. Complaint ¶ 36, R.1-1, PageID#308; Certification, R.1-4, PageID#328–29; Defense Department Press Release, *supra* n.8. Even if the Complaint were limited to formerly certified respirators, that would not affect the federal interest in mine safety, a focus of federal law since the Federal Coal Mine and Safety Act of 1969. *See* MSHA, Federal Coal Mine and Safety Act of 1969 (The Act "was the toughest worker health and safety law of its time and ushered in a new culture in mining"; its "legacy has been healthier, safer mines and steady declines in fatalities and injuries.").[9] Nor would that affect the strong federal interest in even superseded

---

[9] *Available at* https://www.msha.gov/federal-coal-mine-and-safety-act-1969. This Court may take judicial notice of this public record. *See, e.g.*, *Ferguson*, 681 F.3d at 834.

regulations and certifications, which weighs against allowing them to be impugned in state courts.

### c.    The federal issue is not incidental, and its resolution will inform similar cases.

The federal issue is not incidental. The centerpiece of Plaintiffs' fraud claim asks whether federal agencies correctly certified the Manufacturing Defendants' respirators. If that issue is resolved against Plaintiffs, the fraud claim fails, and their other tort claims are called into serious doubt.

The district court's contrary conclusion erroneously narrowed the scope of Plaintiffs' allegations. *See* Order, R.34, PageID#1133. Although the fraud claim certainly depends on the allegations about federal regulations, Plaintiffs also pleaded several of their other claims to implicate those regulations, too. *See* Complaint ¶ 28, R.1-1, PageID#305 (negligence claim; alleging that "each Defendant" used "the governmental approval as a cover for selling" its respirators and failed "to manufacture a respirator which complied with federal certification regulations causing the respirator to have defects resulting in failure to a degree that the respirator does not provide any respiratory protection"); *id.* ¶ 48, PageID#313 (claim about Supplier Defendants; alleging that they knew or should have known that "one of the most common type[s] of government-approved dust masks/respirators was unsafe to use for respiratory protection by mine workers").

37

Resolving the federal issue would also inform similar cases. These Plaintiffs' counsel have inundated Eastern Kentucky with these lawsuits, all advancing the unusual theory that, for decades, respirators that federal agencies certified as compliant with federal law were actually non-compliant. The district court erred by concluding that resolving the federal issue will not "control numerous other cases" raising that issue. *Mikulski*, 501 F.3d at 570.

### 4.    Resolving this important federal issue in federal court would not upset the federal-state balance.

*Grable* jurisdiction is appropriate in a "small" but "special" category of cases. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). Courts must conduct an abstention-like inquiry into whether extending federal jurisdiction over a case would upset the balance between federal and state courts. *See Gunn*, 568 U.S. at 258. Plaintiffs' counsel's idiosyncratic fraud theory shows that resolving this important federal issue in federal court would not upset this balance.

Although Plaintiffs' counsel pleaded these cases to implicate this federal issue, that theory is limited to the strategy advanced by these particular Plaintiffs' counsel. Other respirator plaintiffs, represented by different counsel, do not allege pervasive federal fraud (and 3M has not removed those cases based on *Grable*). If other plaintiffs' complaints plead fraud claims, they are "garden variety" claims that do not implicate federal-question jurisdiction. *Grable*, 545 U.S. at 318–19;

*see, e.g.*, Example Complaint, R.1-6, PageID#348 (¶ 41; pleading fraud based on advertising statements).

The district court thus erred by concluding that jurisdiction over Plaintiffs' claims would open federal courts to many traditional products liability actions. *See* Order, R.34, PageID#1134. *Grable* jurisdiction over Plaintiffs' claims—typical of the strategy of their counsel, but atypical of respirator claims more generally— does not apply to the claims of the thousands of other Kentucky respirator plaintiffs who have elected not to pursue this fraud-on-the-agency theory. That theory, utterly dependent on interpreting federal regulations and contradicting agency decisions, identifies the "special and small" category of respirator claims that are appropriate for *Grable* jurisdiction. *Empire Healthchoice*, 547 U.S. at 699.

That distinguishes *Mikulski*, on which the district court relied. *See* Order, R.34, PageID#1134. There, this Court declined to extend federal jurisdiction over a case implicating the tax code because it could discern no principled way not to extend jurisdiction over similarly important questions about other tax provisions. *See Mikulski*, 501 F.3d at 573–74. Here, allowing federal jurisdiction over Plaintiffs' cases would extend federal jurisdiction only over counsel's claims contesting decades of regulatory certifications by federal agencies. Plaintiffs choosing to plead more "garden variety" claims would not be removed to federal court. *Grable*, 545 U.S. at 318–19.

\*    \*    \*

Resolving Plaintiffs' allegations of a long-standing, pervasive fraud concerning key safety products is a matter of national significance. In this era of fake news and disinformation, their resolution warrants the "experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. The district court's remand order should be reversed.

### C.    Plaintiffs fraudulently joined the Supplier Defendants.

Plaintiffs fraudulently joined two local stores to defeat diversity jurisdiction. In fact, they fraudulently joined the same two Kentucky stores (Kentucky Mine Supply Company and Mine Service Company) as thousands of other Kentucky respirator plaintiffs have joined. Complaints uniformly allege that these two local stores sold unspecified numbers of respirators to unspecified mine operators at unspecified times. Concern has been expressed in the Eastern District of Kentucky about the deluge of these claims. In 2018, when about 760 respirator plaintiffs had pending claims against 3M, the court recognized that a "troubling pattern" was "emerging here." Transcript, R.1-9, PageID#559. In a hearing on a motion to remand, the court gave "fair warning" that "as these cases develop, it would raise an eyebrow here as to what's happening with these suppliers." Transcript, R.1-9, PageID#561. The court was referring to the routine dismissal of identical claims

brought against these same two local stores shortly before trial. The number of such claims has ballooned since that fair warning.

"A defendant is fraudulently joined if it is clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law." *Casias*, 695 F.3d at 432–33 (cleaned up; quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). "[F]raudulent joinder claims are assertions that the pleadings are deceptive." *Nerad v. AstraZeneca Pharm., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006). So, in evaluating fraudulent joinder, courts look beyond the pleadings to "consider summary judgment evidence" and determine "whether there are undisputed facts that negate the claim." *Casias*, 695 F.3d at 433 (cleaned up). For example, a non-diverse distributor was fraudulently joined when many other plaintiffs bringing the same type of products-liability claims had never "propounded meaningful discovery" on that distributor and had frequently "dismissed claims" against it. *In re Zoloft (Sertraline Hydrocholoride) Prods. Liab. Litig.*, 257 F. Supp. 3d 717, 720–21 (E.D. Pa. 2017). Factual controversies are resolved in the plaintiff's favor, "but only when there is an actual controversy." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393–94 (5th Cir. 2000) (cleaned up). Courts do not, "in the absence of any proof, assume that the [plaintiff] could or would prove the necessary facts" to negate fraudulent joinder. *Id.* at 394.

41

The two local stores are fraudulently joined, and the district court's remand order should be reversed on this ground as well.[10]

### 1. The local stores were fraudulently joined because Kentucky law immunizes them.

Kentucky has enacted an innocent-seller statute, often called the "middleman statute." It immunizes retailers from liability for distributing or selling defective products unless the retailers breached an express warranty or "knew or should have known at the time of the distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer." Ky. Rev. Stat. § 411.340. Plaintiffs do not allege that the local stores breached an express warranty, only that they knew or should have known that the respirators they allegedly sold were defective. Complaint ¶¶ 47–53, R.1-1, PageID#313–16.

Given Kentucky law, it follows that the local stores were fraudulently joined. Because Plaintiffs' allegation that the local stores knew or should have known of the respirators' defect is unsupportable, the claims against the local

---

[10] In moving to remand on diversity jurisdiction, Plaintiffs contested the fraudulent joinder of only these two local stores. They conceded all other diversity allegations, including the amount-in-controversy *and*, remarkably, that the other four Supplier Defendants they had named were fraudulently joined. *See* Memorandum, R.23, PageID#980–85. Indeed, three of the other four Supplier Defendants were administratively dissolved decades ago. Ky. Sec'y of State Filings, R.1-10, PageID#563–64; R.1-11, PageID#567–68; R.1-12, PageID#570–72.

stores have no "reasonable basis in law or fact." *E.g., Block v. Toyota Motor,* 665

F.3d 944, 947-51 (8th Cir. 2011) (affirming order denying remand because

supplier defendants were fraudulently joined given Minnesota state statute

providing immunity to suppliers). For two reasons, Plaintiffs cannot show that the

local stores knew or should have known of the defects.

> **a.    Plaintiffs' allegations that the Manufacturer Defendants concealed product defects contradict Plaintiffs' allegations that the two local stores should have known about defects.**

First, Plaintiffs' allegations that the Manufacturer Defendants concealed

product defects cannot be reconciled with their allegations that the two local stores

should have known about these defects. Crediting Plaintiffs' concealment

allegations shows that they lack colorable claims against the local stores.

Plaintiffs allege that the Manufacturer Defendants concealed defects from

everyone—including the local stores. The Manufacturer Defendants allegedly

"made false material representations of [their] products' safety and express

warranties in sales literature, advertisements and sales promotional

communications"; "unjustifiably marketed and advertised" their respirators as

"effective against harmful respirable-sized pneumoconiosis producing dust as

would be found in coal mines"; and "*concealed and failed to disclose*

to . . . *distributors* . . . information which demonstrated the limitations and failures

of their safety products." Complaint ¶¶ 28, 38–39, R.1-1, PageID#305, 309–10 (emphasis added).

The Manufacturer Defendants also allegedly "had superior knowledge of the certification irregularities" of their respirators. *Id.* ¶ 41, PageID#311. Plaintiffs allege that the Manufacturer Defendants should be estopped to assert the statute of limitations because, according to Plaintiffs, the Defendants "[c]onceal[ed] . . . material information within" their "exclusive knowledge" about "dust masks/respirators and their safety in coal mines." *Id.* ¶ 45, PageID#311. Plaintiffs say this concealment was so widespread as to deceive "the general public at large" regarding "the safety and efficacy" of the respirators. *Id.* ¶40, PageID#310–11.

Crediting these allegations as appropriate at this stage, Plaintiffs cannot have colorable claims against the two local stores. *See Casias*, 695 F.3d at 432–33. Respirator "distributors" were allegedly duped by the Manufacturer Defendants' "conceal[ment]" of the "limitations and failures of their safety products." *Id.* ¶ 28, PageID#305. That allegation cannot be reconciled with the allegation that "as a dust mask/respirator distributor/seller," the local stores "knew or should have known" of defects. *Id.* ¶ 48, PageID#313.

Plaintiffs never attempted to explain how the two sets of allegations both could be true. *See* Memorandum, R.23, PageID#980–85; Reply, R.29, PageID#1045–47. And the district court erred by not accounting for these

44

irreconcilable positions. *See* Order, R.34, PageID#1134–40. These contradictory positions show no "reasonable basis" for predicting "liability on the facts" that Plaintiffs chose to plead. *Alexander*, 13 F.3d at 949.

> **b.    Plaintiffs' citations to technical publications do not support colorable claims that the two local stores should have known about defects.**

The Complaint alleges that several technical publications would have notified the local stores of potential defects. In moving to remand, Plaintiffs abandoned all but one of these publications, the 1980 informational appendix of American National Standards Institute ("ANSI") publication Z88.2. *See* Memorandum, R.23, PageID#982–84 (discussing only this publication); Order, R.34, PageID#1137 ("Plaintiffs highlight" this standard). The district court erred by concluding that the informational appendix, and the affidavit of a proposed expert purporting to explain it, showed colorable claims. *See* Affidavit of Frank Parker, R.22-8, PageID#898–900.

The district court first erred by concluding that, on the facts alleged, Kentucky law would impose a duty on the two local stores to know the contents of the appendix. Kentucky law does not charge product sellers with a duty to investigate every product they sell. The middleman statute imposes a duty only of ordinary care. *See* Ky. Rev. Stat. 411.340. A "plaintiff must allege specific or special knowledge of dangerousness to avoid the middleman statute's protections."

*Taylor v. Southwire Tools & Equip.*, 130 F. Supp. 3d 1017, 1023 (E.D. Ky. 2015)

(Thapar, J.) (cleaned up).

To reach the conclusions Plaintiffs submit, the local stores would have had

to (1) employ industrial hygienists to review all possibly relevant technical and

scientific information published, for *all* products supplied; (2) obtain legal counsel

to compare the data with federal regulations; and (3) report their findings to

consumers. That is far beyond "ordinary care," so the district court erred by

imposing it as a legal duty. *See Johnson v. Wal-Mart Stores E., LP*, 169 F. Supp.

3d 700, 703 (E.D. Ky. 2016) (in Kentucky, "the element of duty is a question of

law for the court to decide").

The district court also erred by crediting the expert's bald assertion that the

local stores "certainly had the resources to investigate" the ANSI publication's

informational appendix. The expert cites no data or supporting materials. Nor does

he explain what "resources" were required; nor does he cite materials

demonstrating that two local stores in Harlan and Hazard actually had such

"resources." *See also* Memorandum, R.23, PageID#983 (conceding that because

Plaintiffs have "not yet had the opportunity to conduct specific discovery as to the"

two stores, they were relying on purported industry-wide knowledge). The district

court erred by failing to reject this *ipse dixit*. *See, e.g.*, *General Elec. Co. v. Joiner*,

522 U.S. 136, 146 (1997) (rejecting "opinion evidence that is connected to existing data only by the *ipse dixit* of an expert").

And even if the local stores had a duty and resources to review the ANSI publication, that publication does not support possible liability. Plaintiffs say the critical product defect is that filtering facepiece respirators cannot be adequately fit-checked. Plaintiffs rely on the ANSI publication's informational appendix, which mentions in passing a potential difficulty in fit-checking filtering facepiece respirators. But the ANSI publication itself cautions that the appendix "is not part of" the standard and was "included for information purposes only." ANSI Standard, R.1-7, PageID#434. Far from specifying the defects Plaintiffs allege, in other words, the ANSI publication confirms that filtering facepiece respirators work as designed. *See id.*, PageID#423 (identifying protection factor of 10). The district court erred by imposing a duty on the two local stores not only to review informational appendices that are not part of the relevant standard, but also to credit the information in those appendices over the information in the standard itself.

Moreover, the district court erred by omitting from its analysis federal law squarely rejecting Plaintiffs' theory that filtering facepiece respirators cannot be adequately fit-checked. In 2006, OSHA conducted a retrospective study on criticisms of filtering facepiece respirators, formalizing its findings in a rule.

47

Assigned Protection Factors, 71 Fed. Reg. 50122, 50163–64 (Aug. 26, 2006). After "thoroughly reviewing the available literature" and considering the very fit-checking criticism that Plaintiffs make here, OSHA rejected that litigation-driven theory. *Id.* at 50122, 50163–64. OSHA found that these respirators, including 3M's, *both* achieve the protection levels for which they were designed, *and* can be reliably fit-checked. *Id.* Plaintiffs' defect claim flies in the face of OSHA's rulemaking.

The district court erred by omitting the OSHA rule from its analysis of Plaintiffs' "preliminary proof." Order, R.34, PageID#1138. The district court was required to consider "whether there are undisputed facts that negate the claim." *Casias*, 695 F.3d at 433 (cleaned up). Here, the indisputable fact is that OSHA has expressly rejected Plaintiffs' litigation-driven theory, in a rule "thoroughly reviewing the available literature." 71 Fed. Reg. at 50122, 50163–64. The district court's analysis improperly fails to account for that undisputed fact, which proves that Plaintiffs lack colorable claims against the two local stores.

### 2.    The district court erred by not considering the pattern and practice of joining the local stores in respirator litigation.

The district court also erred by dismissing the pattern and practice in respirator litigation of plaintiffs' joining these same two local stores, yet not meaningfully pursuing claims against them.

48

Although this Court has not previously addressed this issue, federal courts facing repeated litigation involving in-state defendants routinely consider the broader pattern and practice in assessing whether those same in-state defendants are fraudulently joined. For example, in a District of Minnesota case about related property owners' related claims and a repeatedly joined in-state law firm, the court concluded that "a pattern and practice by Plaintiffs' counsel provides a strong basis to suggest that Plaintiffs have also joined Defendant Law Firm here in a mere attempt to avoid removal to federal court." *Kent v. Bank of Am., N.A.*, No. 11-2315, 2012 WL 3582759, at *16 (D. Minn. May 31, 2012), *aff'd*, 518 F. App'x 514 (8th Cir. 2013). Similarly, in a drug MDL in the Eastern District of Pennsylvania, the court concluded that non-diverse pharmacies were fraudulently joined where mass pharmaceutical litigation plaintiffs routinely voluntarily dismissed them after the one-year removal time limit passed. *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002). *Cf. In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16md2734, 2018 WL 6258903, at *6–7 (N.D. Fla. Nov. 8, 2018) (concluding that there was no fraudulent joinder because there was "no pattern of individual plaintiffs bringing suit against [a non-diverse defendant] and then *failing to follow through with discovery*" (emphasis added)).

A pattern and practice of failing to engage in discovery against the non-diverse local stores, followed by their routine dismissal shortly before trial, has emerged in virtually all matters in which these local stores are named alongside the Manufacturer Defendants. State court dockets show the lack of discovery. Dockets, R.1-8, PageID# 506–56.[11] Only one case has gone to trial with a local store remaining as a defendant—almost certainly because the trial occurred within one year of filing. In that case, the plaintiff argued to the jury that the local store remaining as of closing arguments was, "at most, one percent at fault for his injuries." *Williams v. 3M Co.*, No. 7:18-cv-63-KKC, 2018 WL 3084710, at *4 (E.D. Ky. June 22, 2018). This pattern and practice further confirms the fraudulent joinder.

## Conclusion

The Court should reverse the remand order of the district court, rule that the district court had jurisdiction over these cases based on CAFA, federal-question jurisdiction, and diversity jurisdiction, and return these cases to the district court for litigation in federal court.

Respectfully submitted,

*s/ Evan M. Tager*
Evan M. Tager
*Counsel for Appellant 3M Company*

---

[11] Since removal, Plaintiffs' counsel has propounded discovery to the local stores in another case pending in state court.

**Certificate of Compliance**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7) and 6th Circuit Rule 32(a), I certify that this brief complies with the applicable type-volume limitation. According to the word count in Microsoft Word, there are 11,340 words in this brief, excluding the items omitted from the computation by Rule 32(f).

*s/ Evan M. Tager*
Evan M. Tager

*Counsel for Appellant 3M Company*

**Certificate of Service**

I certify that on March 31, 2023, this brief was filed with the Clerk of Court via CM/ECF, which will send notification and a complete copy to all counsel of record.

*s/ Evan M. Tager*
Evan M. Tager

*Counsel for Appellant 3M Company*

# Addendum

Notice of Removal R.1, PageID#1–45

Complaint, R.1-1, PageID#46–319

Certification, R.1-2, PageID#321–23

Certification, R.1-3, PageID#325–26

Certification, R.1-4, Page ID#328–29

Example Complaint, R.1-6, PageID#348

ANSI Standard, R.1-7, PageID#423

Dockets, R.1-8, PageID#506–56

Hearing Transcript, R.1-9, PageID#558–61

Ky. Sec'y of State Filing, R. 1-10, PageID#563–64

Ky. Sec'y of State Filing, R. 1-11, PageID#567–69

Ky. Sec'y of State Filing, R. 1-12, PageID#570–72

Motion to Sever, R.13, PageID#633–63

Response, R.21, PageID#716

Motion to Remand, R.22, PageID#761–63

Affidavit of Frank Parker, R.22-8, PageID#989–900

Memo ISO Motion to Remand, R.23, PageID#937–87

Reply, R.29, PageID#1037–48

District Court's Remand Order, R.34, PageID#1126–51